INHABITANTS OF EAST LIVERMORE

*vs.*

THE LIVERMORE FALLS TRUST & BANKING COMPANY.

Androscoggin.    Opinion December 19, 1907.

*Double Taxation.   Tax Statutes.   Construction.   Statute 1845, chapter 159.
R. S., 1857, chapter 6.   R. S., chapter 8, sections 24, 41,
44, 46, 55, 67 ; chapter 9, sections 2, 5, 12, 18, 19, 29,
30, 31, 32, 33, 34 ; chapter 47, section 24.*

1. A statute imposing taxes is not to be interpreted by its own language alone, but in connection with other tax statutes prior and contemporaneous, and also in the light of contemporaneous and subsequent practical understanding of it by taxing officers and the public.

2. Tax statutes are to be construed strictly against the State, and especially are they to be so construed as to avoid double taxation unless their language interpreted according to recognized principles of statutory interpretation fairly compels a contrary construction.

3. To tax the shares of a corporation to the shareholders, and to tax at the same time the property of the corporation to the corporation itself, imposes in effect, if not in theory, a double tax burden on the shareholders.

4. To tax to the individual shareholders the shares of a bank and to tax at the same time to the bank the shares owned by it in other banks, imposes to that extent an extra burden on the shareholders of the bank so taxed.

5. While the tax statutes of the State specifically and explicitly subject the real estate of a bank to taxation to the bank, notwithstanding its shares are also subjected to taxation, they do not specifically and explicitly subject to such taxation shares in other banks owned by it, and hence it cannot be held liable to taxation upon such shares.

On agreed statement.    Judgment for defendant.

Action of debt to recover a tax assessed against the defendant for the year 1905. This action was duly entered in the Supreme Judicial Court, Androscoggin County, and at the September term thereof, 1906, an agreed statement of facts was filed and the case was sent to the Law Court for determination. The "agreed statement" is as follows :

"This is an action of debt by the plaintiff town, to recover against the defendant for taxes assessed against the defendant for the year 1905, the sum of six hundred four dollars and twenty cents,

"The defendant is a duly organized Trust and Banking Company and was incorporated by special act of the Legislature, approved March 25, 1895, being chapter 275 of the laws of 1895 (which chapter may be referred to by either party as a part of this statement) and has its legal residence and domicile in said town of East Livermore.

"It is agreed that the tax in question was assessed upon the following described property, to wit:—

6 shares of the capital stock of the First National Bank, Portland, Maine, par value, $600,

48 shares of the capital stock of Casco National Bank, Portland, Maine, par value $4800.,

160 shares of the capital stock of Portland Trust Company, Portland, Maine, par value $16000.,

7 shares of capital stock of Peoples Trust Company, Farmington, Maine, par value $700.,

and that the same was in addition to the franchise tax imposed upon said defendant and paid to the State Treasurer.

"It is further agreed that the formal proceedings in the assessment of said tax, and in demand, notice and authority to bring this suit, were in due form and according to law.

"But the defendant has refused to pay said tax, and claims that the property upon which the same is assessed is not subject to said tax, as the property of said defendant.

"It is agreed that the following is a statement of the assets and liabilities of the defendant on April 1st, 1905:—

LIABILITIES.

| | | |
|---|---:|---|
| Capital Stock, | $    50,000.00 | |
| Surplus, | 20,000.00 | |
| Undivided Profits, | 12,422.74 | |
| Unpaid Dividends, | 43.20 | |
| Certificates of Deposit, | 66,634.02 | |
| Time Deposits, | 389,619.28 | bearing int. at $3\frac{1}{2}\%$ |
| Demand Deposits, | 92,489.76 | |
| Due Other Banks, | | |

$631,209.00

RESOURCES.

| | |
|---|---:|
| Loans on Mortgages, | $ 179,611.61 |
| Loans on Collateral, | 34,735.00 |
| Loans on Names, | 184,279.64 |
| Loans on Municipalities, | 701.75 |
| Stocks and Bonds, | 201,076.00 |
| Expense, | 958.09 |
| Furniture and Fixtures, | 5,000.00 |
| Cash on Deposits, | 5,224.58 |
| Cash on Hand, | 19,622.33 |

$ 631,209.00

"It is agreed that the shares of bank stock hereinbefore mentioned as assessed as aforesaid were a part of the foregoing item of 'Stocks and Bonds' in said table of resources.

"Upon the foregoing statement, if the court decides that said property is subject to said tax, judgment is to be for the plaintiff for the amount of five hundred nine dollars and twenty cents with interest from the date of the writ. If said property is not subject to such tax, judgment is to be for the defendant."

*W. H. Newell*, for plaintiff.

*John H. Maxwell and Heath & Andrews*, for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, STROUT, SAVAGE, CORNISH, KING, JJ.

EMERY, C. J. The Livermore Falls Trust and Banking Company the defendant bank, was located and doing business in East Livermore on April 1, 1905, and all the shares of its capital stock were then taxable, and presumably were taxed, at their "just value" in some form in some town in this State, at least so far as such taxing would not be double taxation. R. S., ch. 9, sects. 5 and 29. At that date, however, the bank had purchased and then owned as part of its assets certain shares in national banks and in other trust or banking companies located in this State. The tax assessors of East Livermore that year assessed a municipal tax against the defendant bank upon those shares. This suit is to recover that tax.

The defendant bank contends in defense that under the circumstances a taxation of those shares to the bank in addition to the taxation upon the shares of its own stock to its stockholders would be practically and in effect, if not technically, double taxation, which the taxing statutes taken as a whole do not show was intended by the legislature, and hence the tax is not authorized. The plaintiff replies that the result is not double taxation in any legal sense and, even if it were, the tax claimed is expressly authorized by the statute, R. S., ch. 9, sec. 5, which enumerates "shares in moneyed and other corporations within and without the State" as property to be taxed to the owner. The importance of the question justifies extended consideration.

In the arguments and briefs and in many of the cases cited there was considerable discussion of the nature of such a tax, whether it was a tax upon the franchise of the bank, upon its deposits or depositors, upon its capital stock, or otherwise. We see no need to follow that discussion. The tax sought to be recovered here is simply a tax on certain specific articles of personal property owned by a moneyed corporation, to wit a banking corporation. It is undoubtedly within the letter of the statute cited. R. S., ch. 9, sec. 5. The bank is the beneficial as well as the legal owner of the property. It does not hold the shares as security. It is not known and it does not matter whether they were purchased out of the money paid in as capital stock, or out of the money deposited, or out of surplus and undivided profits. They were purchased with the funds of the bank and are part of its assets available for the payments of its debts and for distribution among its stockholders upon liquidation.

There is also much discussion in the cases as to whether a tax upon corporate shares to the stockholder and another tax upon the corporate property, to the corporation, is double taxation. There are many cases favoring the plaintiff's argument that in legal theory a corporation is a distinct and different person from the owners of its capital stock, that its liabilities are not their liabilities, that its assets are not their assets, and hence that a tax on its property is not a tax on their property and so is not double taxation within the

legal meaning of that term.    But whatever the strict legal theory, it is evident that in effect a share in a corporation is a share in its assets,— that the corporation while holding the only title to its assets cognizable by the courts really holds and manages them, not for itself, but for its stockholders,— that a gain or loss in assets or the value of them by the corporation is a corresponding gain or loss by its stockholders ; and hence if the shares are severally taxed as such and the corporate assets are also taxed, the result is practically a double burden on the stockholder, or double taxation.    The stockholders really pay both taxes.    There are many authorities supporting this view.    Thompson on Corporations, sec. 2813, and cases cited ; Cook on Stockholders, sec. 567 ; Clark and Marshall on Corporations, pages 754, 755, and note 59 ; 27 Am. & Eng. Ency. Law, 949, par. 3, and cases cited ; *Gardiner Factory Co.* v. *Gardiner,* 5 Maine, 133; *Augusta Savings Bank* v. *Augusta,* 56 Maine, 176 ; *Sweetsir* v. *Chandler,* 98 Maine, 145, at pages 154, 155 ; *Tennessee* v. *Whitworth,* 117 U. S. 139 ; In re *Newport Reading Room,* 21 R. I. 440 ; *Cheshire Co. Tel. Co.* v. *State,* 63 N. H. 167 ; *Salem Iron Factory Co.* v. *Danvers,* 10 Mass. 514; *Boston W. P. Co.* v. *Boston,* 9 Met. 199, 202 ; *First National* v. *Douglass Co.,* 102 N. W. 315 (Wis.) ; *Commonwealth* v. *Bank,* 81 S. W. 679 (Ky.) ; *Stroch* v. *Detroit,* 90 N. W. 1029 (Mich.)

It is suggested, however, that moneyed corporations such as banks are so different in nature from business corporations generally that they are not within the purview of those cases or of the above statement.    We do not see any practical difference between them so far as taxes upon their property are concerned.    A banking corporation (not speaking now of pure savings banks) is a business corporation pure and simple.    It is not for charitable, literary, or social purposes or for any other purpose than for business and business profits for its stockholders.    It owes money and has money due it.    It borrows money and uses the borrowed money in its business of discounting notes, dealing in stocks, bonds, etc.    Its depositors are merely its creditors.    They have merely loaned it money.    They have no more concern with its assets or its investments than any

other creditor has.  Its stockholders have the same legal and equitable interest in its assets that the stockholders in any business corporation have in its assets.   Moreover, there are decided cases including banks within the doctrine that taxes upon the shares and also upon the assets of a corporation constitute double taxation. In *Bank* v. *Douglass Co.*, (Wis.) 102 N. W. 315, the bank recovered back a tax levied upon its real estate, the court assuming that it constituted double taxation not required by the statutes of Wisconsin.   In *Commonwealth* v. *Bank*, (Ky.) 81 S. W. 679, the State sought to impose a tax on the notes, bonds, stocks, etc., owned by the bank,— the shares of which were also taxed to the shareholders.   The court held such a tax could not be imposed and seems to assume that it was double and destructive taxation, citing another Kentucky case *L. & E. Mail Co.* v. *Barbour*, 88 Ky. 73, where such a tax was directly held to be double taxation.   In *Hempstead County* v. *Bank*, (Ark.) 84 S. W. 715, it was held that to tax a bank first on all its net assets, and then on its real estate was double taxation.   In *Frederick Co.* v. *Bank*, 48 Md. 117, it was held that to tax the property of a bank and its capital stock at the same time would be double taxation.   The result would be the same whether the capital stock was taxed in solido to the bank or in shares to the shareholders.   In *Cleveland Trust Co.* v. *Lander, County Treasurer*, (Ohio) 56 N. E. 1036, the shares of the bank were taxable to the shareholders.   The bank in behalf of the shareholders sought to have the government bonds held by the bank deducted in fixing the taxable value of the shares.   The court held that the shares were to be taxed at their value no matter what investments the bank made.   A correct decision perhaps.   The court reasoned, however, that the legislature only had a choice whether to tax the value of the shares to the shareholders or the value of the property of the bank to the bank, that it could not do both.   It said:   "The shares or stock in a bank are personal property and are employed by the owner in banking, and therefore should be taxed the same as property of individuals.   To also tax the property of the bank, less the government bonds owned and held by it, would reduce the dividends to be received by the shareholder

or stockholder and would by such double taxation impose greater burdens upon the property employed in banking than upon the property of individuals." True this may be mere dictum, but it shows the opinion of able judges on the question. The case *School Directors* v. *Carlisle Bank*, (Pa.) 8 Watts, 289, seems precisely in point on this question. The bank owned, by purchase for investment, stock of the U. S. Bank of Pennsylvania. The shares of its own stock were taxable to the holders. The School Directors sought to tax the bank for the shares of the U. S. Bank stock it owned. The court held that the bank could not be taxed for them, and this clearly upon the ground that it would be double taxation which the legislature could not have intended to impose. The court said (page 292), that to impose the tax on the shares of the U. S. Bank owned by the Carlisle Bank "would be literally taxing them (the stockholders of the Carlisle Bank) for the same property twice which would seem to be the very height of injustice."

We think it clear that the imposition of the tax sued for in this case adds to the tax burden of the stockholders, and practically in a business sense, even if not in the strict legal sense, results in cumulative or double taxation upon the same person for the same property.

Has the legislature, nevertheless, clearly, explicitly, authorized the tax sued for with its manifest inequitable results as above stated? It is elementary that no tax can be imposed without express statutory authority, that such authority is to be construed strictly against the State, and particularly that no double tax burden shall be imposed on any person or property unless the statutes so clearly require it that no other construction is possible in reason. "The intent to impose taxation which is double even from an economic point of view is not to be ascribed to the legislature in the absence of clear, unambiguous expression." *Bank* v. *Douglass Co.*, (Wis.) 102 N. W. 315. "Tax laws should be so construed as to avoid double taxation unless a contrary construction is compelled by express provision or necessary implication of the statute." *County Commrs.* v. *Bank*, 23 Minn. 280. "Double taxation is never to be presumed. Justice requires that the burdens of goverment shall as

far as practicable be laid upon all; and if property is taxed once in one way, it would ordinarily be wrong to tax it again in another way when the burden of both taxes falls upon the same person. Sometimes tax laws have that effect, but if they do it is because the legislature has unmistakably so enacted. All presumptions are against such an imposition." *Tennessee* v. *Whitewith*, 117 U. S. 129.

The plaintiff's counsel contends that the tax, even if an additional burden on the same persons, is clearly authorized by the explicit, unqualified language of the statute. They cite R. S., ch. 9, sec. 2, which enacts that "all personal property of the inhabitants of the state" is subject to taxation; also sec. 5, which enacts that "personal estate for the purposes of taxation includes . . . all shares in moneyed and other corporations within or without the state;" also sec. 12, which enacts that "all personal property within or without the state" (with certain exceptions not applicable to bank stocks) "shall be assessed to the owner in the town where he is an inhabitant on the first day of each April;" also secs, 30, 31, 32, 33 and 34, which, however, do not expressly impose a tax on bank shares, but rather provide how and when the tax on them shall be assessed and collected. They also cite from sec. 29 the clause "but the stock of such banks, banking associations and other corporations shall be taxed to the owners thereof where they reside."

It may be conceded that the language of sec. 5 is explicit that all shares in moneyed corporations shall be taxed, but it does not necessarily follow that they are to be taxed twice, or so taxed that the result would be a double taxation of them. The section is equally explicit that "all goods, chattels, moneys and effects . . . all obligations for money or other property . . . all public stocks and securities" shall be taxed. If it follows from this that all such property is to be taxed to a corporation whose shares representing the same property are taxed to the shareholders, there would be a double taxation of crushing weight and all corporations subject to such taxation would be crushed out of existence. If, besides the tax upon their shares, banks and banking companies are to be taxed upon all their stocks, bonds, promissory notes, gold and silver coin, bank bills, legal tender notes, etc., in their vaults or

elsewhere the business of banking cannot be carried on by corporations. It seems incredible that the legislature could have intended to impose a tax upon the personal property of banks of its own chartering as well as upon its shares, while national banks are entirely exempt from such taxes. *Owensboro Nat. Bank* v. *Owensboro*, 173 U. S. 664.

Section 5, however, should not be read by itself. It is only a part of the statutes upon taxation. It should be read in connection with the other statutes prior and contemporaneous, and also in the light of contemporaneous and subsequent practical construction by the taxing officers and business public. Taking all these into consideration, the tax statutes as a whole do not force us to the conclusion that a tax is to be assessed at the same time upon all the personal property of a corporation to the corporation and also upon all its shares to the shareholders. The tax laws of this State from its organization have in general, comprehensive terms imposed taxes on all personal property not specifically exempted, terms comprehensive enough to include the personal property of corporations and also the shares of their capital stock; yet it was early held, following the anterior decisions of the court of the parent State, Massachusetts, that such statutes did not impose a tax upon the personal property of a corporation and upon the shares of its stock in the same year's assessment. The case of *Gardiner C. & W. Factory Co.* v. *Gardiner*, 5 Maine, 133, was a case where the Gardiner municipality sought to tax the plaintiff corporation for its personal property. The court held that the tax imposed on the shares of the corporation was a tax upon its personal property as well, and was the only tax that could be levied on such property. The tax act of 1845, ch. 159, in its enumeration of personal property liable to taxation was as specific and comprehensive as the present statute. It included "all goods and chattels, moneys and effects, etc., all shares in moneyed corporations," etc.; and there was no specific exemption of bank shares owned by another bank; yet in *Augusta Bank* v. *Augusta*, 36 Maine, 255, the court said of the act: "The intention is clearly exhibited to subject all real and personal property of the inhabitants of this State to taxation unless

it be specially exempted.   It is equally clear it was not the intention
of the legislature to subject the same property to be twice taxed at
the same time in the ordinary mode of taxation when such a result
could be conveniently and safely avoided."   In that case the bank
had loaned $5,000 of its capital or deposits to the Ken. & Port.
R. R. Co., taking the company's note therefor, but in addition to
the note the bank received and held an assignment of fifty shares of
the stock of the P. S. & P. R. R. Co.   The court said that if those
fifty shares "constituted a part of the capital of the Augusta Bank,
they were liable to taxation only by an assessment upon its stock-
holders for the value of its shares;" but held that it was the $5,000
note only in which the funds of the bank had been invested, that
none of the funds had been paid out for the stock, and hence that
this stock was not taxed as the note was by a tax upon the shares
of the bank.   The difference between that case and this is
manifest.   In that case the bank did not really own the shares of
railroad stock.   They were no part of its assets, being held only
as security for the $5,000 note.   The bank could recover of the
real owner the tax it was compelled to pay on the shares.   In this
case the bank itself is the real owner of the shares.   They were
purchased with its money and are a part of its assets, as much so as
the $5,000 note was a part of the assets of the Augusta Bank.

The tax act of 1857 was substantially the same as that of 1845,
and came before the court for interpretation in the case *Augusta
Savings Bank* v. *Augusta,* 56 Maine, 176.   The plaintiff bank
had invested some of its deposits in shares of national banks, and
the assessors of Augusta had assessed to it a tax upon those shares.
At that time the several depositors were liable to municipal taxation
on their deposits in the plaintiff bank.   The court held that the
bank could not be taxed for the bank shares it had purchased, for
the reason that it would be double taxation contrary to the policy
of the law.   We think that case and this are alike in principle.   In
that case the bank shares purchased, practically though not theoreti-
cally, belonged to the depositors, who by paying a tax on their
deposits paid a tax on those shares.   In this case the bank shares
purchased, practically belong to the stockholders of the defendant

bank who pay a tax on them when they pay the tax on their shares in the defendant bank.

The present tax act, R. S., ch. 9, does not enumerate or specify any more particularly or explicitly what is to be taxed than did the acts of 1845 and 1857. The other sections cited, secs. 31, 32, 33 and 34, do not impose a tax on corporate shares, but provide how they shall be disclosed to the assessors, and how the tax provided by the previous sections may be assessed and collected.

We also think a consideration of other sections of the tax act and their history will show that it has been the steady policy of the legislature not to impose double taxation except in the few instances particularly specified. In assessing the shares of the stock of a bank to its several stockholders, "the assessed value of the real estate, vaults and safe deposit plants" is to be deducted, R. S., ch. 47, sec. 24. When a company is required by law to invest any part of its capital stock in the shares of another corporation, such investment is not to be taxed to the company but only to its stockholders. R. S., ch. 9, sec. 18. The stock of an insurance company is exempt from taxation to the amount of the real estate taxed to it, sec. 19. The State tax on railroad companies is in the place of all taxes on its stock. R. S., ch. 8, sec. 24. So is the State tax on telegraph and telephone companies, and, further, the local tax on their real estate is to be deducted from their State tax, sec. 41. So in the case of express companies, sec. 44. The value of the real estate of insurance companies is to be deducted in assessing the State tax upon them, sec. 46. When the legislature, after the decision in *Augusta Savings Bank* v. *Augusta*, 56 Maine, 176, (supra,) imposed a tax on savings banks measured by the amount of the deposits in them, it exempted the depositors themselves from taxation on their deposits, sec. 55. In imposing a State tax upon trust companies, etc., measured by the amount of certain of their deposits the legislature exempted those deposits from municipal taxation, sec. 67.

The foregoing illustrations should be enough to show the legislative policy to be against double taxation. There seems to be not only no intention to impose it, but an anxiety to avoid it.

The clause from sec. 29, is no more explicit and has no more than sec. 5. Read in the same light and interpreted by the same rules as above applied to that section it is modified to the same extent.

True, there is the argument, expressio unius exclusio alterius, the argument that by not affirmatively guarding against the double taxation of bank stocks owned by another bank while so carefully guarding against double taxation in the instances named, the legislature meant to leave such stocks exposed to double taxation. The answer is that it does not appear that the legislature ever contemplated such double taxation or apprehended that its statutes would be construed as authorizing it. The court had already held, and more than once, that a tax upon its personal property to a corporation and another tax at the same time upon its shares and its shareholders was double taxation not authorized by the law. Since these decisions the legislature has not in any statute declared explicitly and specifically that in other cases than those named a tax shall be assessed to a corporation upon its personal property in addition to the tax upon its shares. On the contrary, since those decisions the legislature has at least twice re-enacted the statutes upon this subject in substantially the same language. This is to be regarded as an expression of the legislative intent for the court's interpretation of the statutes to stand as the law. *Tuxbury's Appeal*, 67 Maine, 267.

Our conclusion is that our taxing statutes, taken as a whole and interpreted according to well known principles of interpretation, do not require the imposition of the tax sought to be recovered in this suit, and that hence the judgment must be for the defendant.

*Judgment for defendant.*